HEE 4/27/2021



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2021 JUN 22 AM 11: 23

CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY

U.S. Department of Justice

United States Attorney
District of Maryland

| Joan Mathias | Suite 400 | DIRECT: 410-209-4850 |
| Assistant United States Attorney | 36 S. Charles Street | MAIN: 410-209-4800 |
| Joan.Mathias@usdoj.gov | Baltimore, MD 21201-3119 | FAX: 410-962-9293 |

April 22, 2020

**VIA E-MAIL**
David Walsh-Little, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Md 21202

         Re:    <u>United States v. James Dale Reed</u>
                Criminal No. ELH-20-406 (D. Md.)

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, James Dale Reed (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.     The Defendant agrees to plead guilty to Count One of the Indictment that has been filed against him, in which he was charged with Threats to a Major Candidate for the Office of President or Vice President, in violation of 18 U.S.C. § 879. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland

    a.    The Defendant knowingly and willfully threatened to kill, kidnap, or inflict bodily harm upon a person; and

    b. The target of his threats was a major candidate for the office of President or Vice President, or a member of the immediate family of such candidate.

    c. At the time of the threat, Joseph Biden and Kamala Harris were major candidates for the office of President and Vice President, respectively.

### Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 879 | N.A. | 5 years | 3 years | $250,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

2

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.   The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.   If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.   If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.   The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.   If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.   By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. a. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

b. This Office and the Defendant further agree that the applicable base offense level is a level 12 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2A6.1(a)(1).

c. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

4

    d.    **Thus, the adjusted offense level is 10.**

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income. The Defendant agrees the Defendant will not raise any argument that any specific prior conviction is not a predicate for a career offender designation under U.S.S.G. § 4B1.1.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

    b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.   a.   The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.      Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in items that constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

c.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.      The Defendant agrees to assist fully in the forfeiture of the above described property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Abandonment

12.     The Defendant knowingly and voluntarily waives any right, title, and interest in the following property:

   a.    Smith & Wesson 9VE Handgun, Serial No.: PBV12382;

   b.    JC Higgins 20- 12 Gauge, Serial No.: Unknown;

   c.    .223 caliber Bushmaster XM15- E25, Serial No.: BFI4326004;

   d.    Hi Point 995, Serial: B716765; and

   e.    approximately 8 ammunition cans with 5.56 and 9mm ammunition and AR-15 carbine magazines

(the "Abandoned Property") and consents to its federal administrative disposition, official use, and/or destruction.

13.    The Defendant understands that he would have a right to file a claim to the Abandoned Property and waives his right to claim the Abandoned Property. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

### Defendant's Conduct Prior to Sentencing and Breach

14.   a.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

   b.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made

7

during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

15. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

16. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

*Joan C. Mathias*

By: _____
James G. Warwick/Joan C. Mathias
Assistant United States Attorneys

8

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

05/10/21
Date

James D. Reed
James Dale Reed

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

05/16/21
Date

David Walsh-Little
David Walsh-Little, Esquire

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

1. On Sunday October 4, 2020, at approximately 4:26 a.m., James Dale Reed (the "Defendant") left a letter threatening then candidates President Joseph Biden and Vice President Kamala Harris on the doorstep of a resident of Frederick, Maryland. The Defendant was captured by a Ring door camera. The resident of the home did not know the Defendant, but had several Biden/Harris campaign signs located in the yard. The letter threatened those who voted for the candidates and threatened to "beat Grandpa Biden to the point of death" and "anally rape" Candidate Harris with "my rifle barrel".[1] Through their investigation, United States Secret Service ("USSS") was able to identify the subject to be the Defendant.

2. The letter stated: "WARNING!!! This is a warning to anyone reading this letter if you are a Biden/Harris supporter you will be targeted. We have a list of homes and addresses by your election signs. We are the ones with those scary guns. We are the ones your children have nightmares about. The Boogeymen coming in the night. We will not comply or give anything up to Grandpa Biden or Harris, especially our guns they will have to take them from our cold dead hands. We will not let Biden/Harris turn our country into a Communist wasteland. Now for anyone who supports Biden/Harris such as Gabby Gifferts I will personally finish what the retard in California failed to do. I will personally put my Glock 17 to her head and make damn sure her brains go out the back of her skull, as well as any other anti-gun group leader. Now as for Grandpa Biden and Mrs. Harris, when we capture Grandpa Biden we will all severely beat him to the point of death as for Mrs. Harris she will be bent over and anally raped by my Rifle barrel then for the Grand end the both will be executed on National Television. I would prefer CNN then every Biden/Harris supporter will understand what the 2nd Amendment is all about. If Biden/Harris want a war then they will get one, of course that means Black lives matter and Antifa."

3. The Defendant admits that the plain meaning as well as context of the threats of violence made in the letter constitutes a violation of 18 U.S.C. § 879. The Defendant knowingly and willfully threatened to kill, kidnap, or inflict bodily harm upon a person. At the time of the offense, Biden was a major candidate for President and Harris was a major candidate for Vice President.

4. Investigators learned that the Defendant had guns registered to him, including an M4/AR-15 and a 9mm Smith and Wesson pistol.

5. On October 15, 2020, investigators contacted the Defendant at his residence and requested elimination palm prints and a more extensive handwriting sample. The Defendant consented and complied with both requests.

---

[1] Throughout this Statement of Facts, the quoted material has been transcribed as found in the source text, complete with any erroneous or otherwise nonstandard spelling or punctuation.

6. The Defendant was advised of his Miranda rights, which he voluntarily and willingly waived by signing a Frederick Police Department *Miranda* form. Investigators audio-recorded this waiver and all subsequent questioning. The Defendant then admitted to writing the letter on Saturday evening, October 3, 2020, because he was upset at the political situation. The Defendant then drove to Kline Boulevard in the early morning hours of October 4, 2020, and took the letter to the first house he saw with multiple democratic political signs.

7. Following the interview, law enforcement applied for and obtained an Extreme Risk Protective Order (ERPO) to seize the Defendant's firearms based on misdemeanor charges of violations of MD Election Law 16-201a (voter intimidation) and MD Code 3-1001(threats of mass violence). Law enforcement also applied for a search warrant for the clothing items visible on the video surveillance. On October 15, 2020 at approximately 6:00 p.m., law enforcement conducted the search of the Defendant's house. The search was limited primarily to the "back room" where the Defendant stated his guns and military equipment were located. The "back room" that the Defendant referred to was full of extensive amounts of U.S. Army paraphernalia, including many pairs of military-issue uniforms, helmets, plate carriers, and bags/packs. Two grenades without blast caps were found but not seized. The room resembled a U.S. military outpost bunker containing a voluminous supply of maps, books, and documents related to military strategy and history.

8. Pursuant to the ERPO, the following was seized:

a. Smith & Wesson 9VE Handgun, Serial No.: PBV12382;

b. JC Higgins 20- 12 Gauge, Serial No.: Unknown;

c. .223 caliber Bushmaster XM15- E25, Serial No.: BFI4326004;

d. Hi Point 995, Serial: B716765; and

e. approximately 8 ammunition cans with 5.56 and 9mm ammunition and AR-15 carbine magazines

9. Further, a stack of papers found in a military-style "Go-bag" near the foot of the cot in the room was seized because it contained documents that included: conspiracy theories about FPOTUS Obama, a highlighted list of attendees at a conference about 10 years ago (many of whom are/were U.S. government protectees), and a hand-drawn map of Frederick Police Department Special Response Team tactical responses. The jacket seen in the Ring doorbell video was also found and seized.

10. These events occurred in the District of Maryland

SO STIPULATED:

*Joan C. Mathias*

James G. Warwick/Joan C. Mathias
Assistant United States Attorneys

_James D. Reed_ / 05/10/21
James Dale Reed
Defendant

_David Walsh-Little_
David Walsh-Little, Esquire
Counsel for Defendant